CARTER et al. v. McCASLAND
(MONAHAN, Cross-Petitioner in Error.)

No. 18499.   Opinion Filed Sept. 18, 1928.

(Syllabus.)

1. Indians—Statutory Restrictions on Homestead of Deceased Allottee of One-Half or More Indian Blood with Issue Surviving Born After March 4, 1906.

If any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving, born since March 4, 1906, the homestead of such deceased allottee, under the provisions of section 9 of the Act of Congress of May 27, 1908, shall remain inalienable for the use and support of such issue during their life or lives, or until April 26, 1931, unless restrictions against such alienation are removed therefrom by the Secretary of the Interior in the manner provided by section 1 of said act.

2. Same—Guardian and Ward—Validity of Agricultural Lease on Homestead for One Year Made by Guardian of Minor Heir Before Expiration of Valid Existing Lease.

Under section 2 of said Act of Congress, a valid agricultural lease covering such homestead for a period of one year from the date thereof may be made by the guardian of such minor, if approved by the county court having jurisdiction of said guardianship proceeding, but the act does not empower the guardian to make a one-year agricultural lease subject to a valid existing agricultural lease of the same property which has several months to run; however, where there is a showing of necessity for making said lease shortly before the expiration of an existing lease in order to regulate the course of cultivation to be pursued the subsequent year, the same will be sustained in equity.

3. Same—Question of Fact Whether Execution of Lease Before Termination of Existing Lease was Necessary to Control Course of Cultivation.

The question as to whether or not such new lease was made at a time when necessary to control the course of cultivation for the ensuing year, is one of fact to be determined by the court or jury.

4. Same—Evidence Held not to Support Finding of Necessity for Making Lease Before Expiration of Existing Lease.

Record examined, and held, that there is no competent evidence which supports the finding of the trial court that it was necessary to control the course of cultivation for the ensuing year that the lease of the defendant in error, McCasland, which was to begin on January 1, 1924, and expire on December 31, 1924, be taken on September 7, 1923.

Error from District Court, Stephens County; M. W. Pugh, Judge.

Action by W. J. Monahan against G. W. Carter, T. H. McCasland, and Roe Forth. Judgment for McCasland, from which all the other parties appeal. Reversed, with directions.

Bond & Bond, for plaintiffs in error.

Sullivan & Rice, for defendant in error.

Womack, Brown & Cund, for cross-petitioner in error.

MASON, V. C. J. The cross-petitioner in error, W. J. Monahan, as plaintiff, commenced this action against the other parties

herein to recover the possession or rental value of certain described lands for the year 1924.

The pleadings of all the parties and the undisputed evidence disclose that said lands were a part of the original allotment of Mimie Wilson, a full-blood Choctaw Indian; that said Mimie Wilson died in 1909, leaving Tecumseh Wade, a minor child, born since March 4, 1906, and other heirs; that the same was a homestead allotment and was restricted to the benefit and use of said Tecumseh Wade until the year 1931, and that Louisa Anderson was the lawful guardian of said Tecumseh Wade.

Each of the parties, W. J. Monahan, T. H. McCasland, and G. W. Carter, relied upon rental contracts executed by said guardian and approved by the county court of McCurtain county, the court having jurisdiction of said guardianship proceedings. McCasland's lease was executed September 7, 1923, to begin January 1, 1924, and end December 31, 1924. Carter's lease, under which Roe Forth claimed as his tenant, was executed September 24, 1923, and ran for a period of one year from its date. Monahan's lease was executed March 1, 1924, covering a period of time from January 1, 1924, to December 31, 1924.

Carter, through his tenant, Roe Forth, was in possession of said lands during the previous year, 1923, under a valid contract executed by said guardian and approved by the county court. They were also in possession during the year 1924. It was agreed that the rental value of said land for the year 1924 was $281.04.

The trial court denied the plaintiff any recovery and rendered judgment in favor of the defendant McCasland and against the defendants Carter and Forth for the agreed rental value of said land for the year 1924, in the sum of $281.04, from which the other parties appeal.

For reversal, plaintiffs in error contend that the lease of the defendant in error, McCasland, is void and that their lease is valid and prior to that of the cross-petitioner in error, Monahan. In support of this contention, he cites sections 2 and 9 of the Act of Congress of May 27, 1908, as follows:

Sec. 2. "That all lands other than homesteads allotted to members of the Five Civilized Tribes from which restrictions have not been removed may be leased by the allottee if an adult, or by guardian or curator under order of the proper probate court if a minor or incompetent, for a period not to exceed five years, without the privilege of renewal: Provided, that leases of restricted lands for oil, gas, or other mining purposes, leases of restricted homesteads for more than one year, and leases of restricted lands for periods of more than five years, may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise; and provided, further, that the jurisdiction of the probate courts of the state of Oklahoma over lands of minors and incompetents shall be subject to the foregoing provisions, and the term minor or minors, as used in this act, shall include all males under the age of 21 years and all females under the age of 18 years."

Sec. 9. "That if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving, born since March 4, 1906, the homestead of such deceased allottee shall remain inalienable unless restrictions against alienation are removed therefrom by the Secretary of the Interior in the manner provided in section 1 hereof for the use and support of such issue during their life or lives, until April 26, 1931. * * *"

This same question was presented and the same contention made in the case of Carter v. McCasland, No. 18485, opinion filed on the 26th day of June, 1928, 131 Okla. 253, 268 Pac. 706, the third paragraph of the syllabus being as follows:

"Under the Act of Congress of May 27, 1908, regulating the leasing of restricted Indian lands for agricultural purposes, a valid lease by the owner may be made of his homestead allotment for a period of one year from the date thereof and of his surplus allotment for a period of five years from the date thereof without the privilege of renewal. In case of the one-year lease on the homestead allotment, the allottee may make an agricultural lease shortly before the expiration of an existing lease to begin at the expiration of the prior lease, where it is shown to be necessary in order to regulate the course of cultivation which is to be pursued the subsequent year."

See, also, Reirdon v. Bronaugh, 129 Okla. 255, 264 Pac. 610; Worrell v. Graves, 101 Okla. 246, 225 Pac. 361.

The question of whether or not McCasland's lease was made at a time reasonably near the termination of the existing lease and when necessary to control the course of cultivation for the ensuing year, was a question of fact. Walker v. Holmes, 91 Okla. 64, 215 Pac. 1065.

The judgment of the trial court necessarily implies a finding that it was necessary for McCasland to take his lease at the time it was taken in order to control the course of cultivation to be pursued for the year 1924. Therefore, if there is any competent

evidence reasonably tending to support such finding, the same will not be disturbed by this court on appeal. We have carefully examined the record, however, and fail to find any competent evidence to support such finding. The evidence is that said land was used for growing cotton and corn and that it was not necessary to break the ground and prepare it for such crops before the first of the year. It appears that the defendant in error controlled the leasing of several hundred farms and he testified that it was necessary to rent said land at that time in order to have sufficient time to look around and secure a good tenant. Such testimony was, no doubt, based upon the theory that he expected to sublease said land. This does not bring his lease within the rule above announced. The expression, "In order to regulate the course of agriculture for the ensuing year," as we construe it, means that it is necessary to get possession of the premises and commence tilling and preparing the soil for the crop to be grown during the term of the lease. The evidence in this case does not even disclose what crop McCasland expected to grow. We, therefore, must conclude that McCasland's lease was invalid and that the trial court erred in rendering judgment in his favor.

The cross-petitioner in error contends that the lease of Carter was invalid for the same reason. Counsel for Carter contend that, under the provisions of the act of Congress above referred to, the guardian could lease said land for one year without the approval of the Secretary of the Interior, and, therefore, the requirements set forth in the case of Reirdon v. Bronaugh and the other cases, supra, do not apply when said lease on the homestead does not begin at a future date, but runs for one year only from its date. This, of course, would be true if there were no valid existing lease at the time the new lease was executed, but the record in this case discloses that there was a valid existing lease at said time.

The Supreme Court of the United States, in the case of United States v. Noble, 237 U. S. 74, 35 Sup. Ct. 532, 59 L. Ed. 844, had this same question before it in a case where Quapaw Indian allottees in leasing their lands for mining or business purposes were limited to leases for a period of ten years. The court held that these provisions of the act of Congress did not empower said allottees to make a ten-year mining lease subject to a valid ten-year mining lease of the same property which still had several years to run. The lease under consideration in that case was executed in 1905 to run for a period of ten years, and the existing lease did not expire until 1912. It was contended that the remaining portion of the second lease from 1912 to 1915 was valid. This decision is, therefore, controlling in the instant case, and we must conclude that Carter's lease made for one year, but subject to the existing lease for the remainder of the year 1923, was unauthorized and void in the absence of evidence to bring it within the provisions of Reirdon v. Bronaugh, supra.

No contention is made but what the lease of the cross-petitioner in error, Monahan, is valid if the other two leases are void and unenforceable.

The judgment of the trial court is reversed, and the cause remanded, with directions to render judgment in favor of the plaintiff, Monahan, and against the defendants Carter and Forth for the agreed rental value of said lands for the year 1924, with interest and cost.

BRANSON, C. J., and PHELPS, LESTER, HUNT, CLARK, RILEY, and HEFNER, JJ., concur.

Note.—See under (1) 31 C. J. p. 527, §103.